**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Orville W. Thompson, | Case No. 2:26-cv-00749-RMG |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| Santee Automotive LLC, Exeter Finance LLC, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, | |
| Defendants. | |

This matter is before the Court on the motion to dismiss filed by Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC (collectively, the "CRA Defendants")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16). For the reasons set forth below, the Court grants the CRA Defendants' motion.

## I.    Background

Plaintiff alleges that, on April 22, 2025, an employee of Defendant Santee Automotive LLC ("Santee") visited his home so that Plaintiff could "sign[] documents as the co-signor" for John Taylor—Plaintiff's former friend—to purchase a 2016 Chevrolet pickup truck from Santee. (Dkt. No. 1-2 at ¶¶ 27-32, 35). Plaintiff did not read the documents before he signed them. (Dkt. No. 11-2 at 28). In May 2025, Plaintiff received a monthly statement from Defendant Exeter Finance LLC ("Exeter"), indicating that he had an upcoming payment due on the note for the truck. (Dkt. No. 1-2 at ¶ 42). When Plaintiff inquired as to why he was responsible for paying the note,

---

[1] "CRA" refers to consumer reporting agencies. *See* (Dkt. No. 16 at 1 n.1).

1

Santee provided him with documentation showing that he had signed the vehicle purchase agreement and related documents as the primary buyer, contract holder, and borrower and advised him that he—not Taylor—bought the truck. *Id.* at ¶ 48.

Believing that Santee had forged his signature by "affix[ing] [his] printed name, rather than his signature," on the documents, *id.* at ¶¶ 36-37, Plaintiff notified the CRA Defendants that he disputed the accuracy of his credit report. *Id.* at ¶¶ 57, 64. To support his claim of forgery, Plaintiff provided the CRA Defendants with copies of his driver's license bearing his true signature, the vehicle purchase agreement and related documents showing his printed name, prior correspondence with other CRAs, a complaint filed against Santee and Exeter with the South Carolina Department of Consumer Affairs, a report from a handwriting expert, and a sworn statement from Taylor. *Id.* at ¶ 65. The CRA Defendants removed the debt from Plaintiff's credit report and then notified Santee and Exeter of his dispute. *Id.* at ¶¶ 58, 62, 67. Santee and Exeter confirmed that the sales transaction was authorized and that Plaintiff's account status was accurate. *Id.* at ¶¶ 59, 62. Accordingly, the CRA Defendants reinserted the debt on Plaintiff's credit report. *Id.* at ¶ 67.

Plaintiff did not pay the debt, causing his credit score to drop, and his credit reports reflect a "charge-off"[2] by Exeter. *Id.* at ¶ 71. As a result, Plaintiff brought this action in the Court of Common Pleas of Clarendon County, South Carolina, and Defendants removed the action to federal court shortly thereafter. (Dkt. No. 1). Relevant here, the Complaint alleges that the CRA Defendants violated provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et*

---

[2] A "charge off" means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Charge Off*, *Black's Law Dictionary* (12th ed. 2024).

*seq*. Specifically, Plaintiff alleges that the CRA Defendants violated § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of his credit report, and violated § 1681i by: (1) failing to conduct a reasonable reinvestigation of the disputed information; (2) failing to delete information found, after reinvestigation, to be inaccurate, incomplete, or unverifiable; and (3) reinserting information into Plaintiff's credit file that had previously been deleted. (Dkt. No. 1-2 at ¶ 102).

The CRA Defendants have now filed this motion to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16). They argue that the alleged inaccuracy—namely, that the vehicle purchase agreement and related documents in Plaintiff's credit file bear his forged signature—was not objectively and readily verifiable, and therefore did not trigger any duty on their part to resolve what they characterize as a legal dispute. *Id*. at 1-2. Plaintiff responded in opposition (Dkt. No. 21), and the CRA Defendants filed a reply in further support of their motion (Dkt. No. 27).

This matter is ripe for disposition.

## II.    Legal Standard

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). *See also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.") (citation and punctuation omitted). To be legally sufficient, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which

would support [his] claim and would entitle [him] to relief." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id*. (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

### III.    Discussion

Although the CRA Defendants raise several arguments regarding the plausibility of Plaintiff's FCRA claim, the one that bears consideration here is the contention that the FCRA does not impose a duty on CRAs to resolve legal disputes that are not objectively and readily verifiable. (Dkt. No. 16 at 7-10). In other words, they posit that to verify the alleged inaccuracy in Plaintiff's credit report, the CRA Defendants would have had to make a legal determination that his signature had been forged by Santee, which is not the type of determination the FCRA obligates CRAs to make. *Id*. at 8-9. In response, Plaintiff mainly argues that the Complaint sufficiently alleges an objectively and readily verifiable inaccuracy in his credit report—namely, that Santee engaged in identity theft by forging his signature. (Dkt. No. 21 at 5-6).

The Complaint alleges violations of 15 U.S.C. §§ 1681e(b) and 1681i. (Dkt. No. 1-2 at ¶ 102(a)-(d)). The former provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To

4

state a claim for a violation of § 1681e(b), a complaint must sufficiently allege that (1) a particular "consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (citation omitted).

Section 1681i requires CRAs to conduct reinvestigations of allegedly inaccurate information contained in credit reports under certain circumstances:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

In asserting an FCRA claim under §§ 1681e(b) and 1681i, the plaintiff must satisfy a threshold showing of inaccuracy. *See Alston v. Equifax Info. Servs., LLC*, No. TDC-15-3343, 2016 WL 5349716, at *3 (D. Md. Sep. 22, 2016). Significantly, the Fourth Circuit recently articulated the meaning of "inaccuracy" in the context of the FCRA. *See Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249-52 (4th Cir. 2025).[3] In *Roberts*, the Fourth Circuit recognized that, "[w]hile defining 'accuracy' as 'not deviating from truth or accuracy' is a bit circular," definitions

---

[3] Although *Roberts* addresses the meaning of "inaccurate" within a different provision of FCRA, *see* 15 U.S.C. § 1681s-2(a), the Supreme Court of the United States has recognized that "identical words and phrases within the same statute should normally be given the same meaning." *Monsalvo v. Bondi*, 604 U.S. 712, 726 (2025) (citation omitted). Moreover, in reaching its determination, the Fourth Circuit relied on caselaw regarding "consumer reporting agencies" (as at issue here). *See* 131 F.4th at 251 n.6 ("We adopt their logic here to the extent that we hold that furnishers, like consumer reporting agencies, are not expected to function like full tribunals . . . .").

propounded by other circuits that reference "truth" signify that determining accuracy is an "objective inquiry." *Id*. at 250-51 (citing *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359, 1367 (11th Cir. 2024)). Accordingly, the court reasoned that, in the context of the FCRA, disputed information is "actionably" inaccurate only where it is "objectively and readily verifiable as mistake- or error-free." *Id*. at 251 (citing *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023) (punctuation omitted)). Indeed, this is because CRAs are not "tribunals," "[t]hey have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make." *Id*. They can, however, investigate disputes concerning "objectively and readily verifiable" information. *Id*. (citation omitted). Accordingly, on a motion to dismiss, a plaintiff must allege factual allegations that "the inaccuracy or incompleteness is objectively and readily verifiable" by the CRA. *Id.* at 252.

As to when an inaccuracy meets this standard, the court noted that "[w]hether a debt has been paid could, in some instances, be objectively and readily verifiable." *Id*. So, too, "claims that alleged debts never occurred." *Id*. "Also, while many legal disputes will not involve objectively and readily verifiable information, some disputes that implicate legal questions and legal doctrines will." *Id*. (citing *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 345 (4th Cir. 2023) (reporting a delinquent balance on the plaintiff's credit report created an actionable inaccuracy because the plaintiff was compliant under his bankruptcy plan)).

On the other hand, if a dispute "involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform," it is not "objectively and readily verifiable." *Id*. at 251. Likewise, "[a] dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery" is not objectively and readily verifiable either. *Id*. Moreover,

"[i]naccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a [CRA] to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Id*.

With these principles in mind, the Court finds that the Complaint fails to sufficiently allege that the purported inaccuracy in Plaintiff's credit report—which turns on whether his signature was forged—is objectively and readily verifiable. Although Plaintiff claims that he is the victim of identity theft, he also admits that he intended to and did co-sign documents to allow Taylor to purchase the truck. *See* (Dkt. No. 1-2 at ¶¶ 31, 35) ("Taylor called the Plaintiff and asked him to co-sign, and the Plaintiff agreed to co-sign. . . . The Plaintiff *signed* documents as the co-signor for Taylor . . . .") (emphasis in original). Accordingly, this admission shifts the dispute from a straightforward question of identity—i.e., whether Plaintiff incurred the debt at all—to the more complex question of whether the signature appearing on the documents belonged to Plaintiff. Resolving that issue would require the CRA Defendants to determine the authenticity of the signatures on the vehicle purchase agreement and related documents, potentially through expert handwriting analysis, and assess the circumstances and intent surrounding Santee's alleged misconduct. They might also be required to evaluate competing evidence submitted by Santee and Exeter indicating that Plaintiff's signature was not forged, weigh that evidence against Plaintiff's assertions and supporting materials, and make credibility determinations as to the reliability and significance of that evidence.

However, as the CRA Defendants correctly note, such an investigation would involve the type of "complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform." *Roberts*, 131 F.4th at 251 ("A dispute that . . . requires credibility determinations and quasi-discovery [is not objectively and readily verifiable]."). *See also id*. ("Inaccuracies that are

7

objectively and readily verifiable do not include . . . claims of fraud . . . .”). Indeed, while not dispositive, the necessity of an evidentiary hearing on whether Plaintiff's signature was forged underscores that the issue presents genuine factual disputes requiring judicial resolution. (Dkt. No. 18). As such, it would be unreasonable to expect a CRA to resolve the same issue, because they lack the “resources [and] expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make.” *Roberts*, 131 F.4th at 251 (“Requiring investigations that resemble full court proceedings would not be reasonable.”). Thus, under *Roberts*, the Complaint fails to allege that the purported inaccuracy in Plaintiff's credit report is objectively and readily verifiable because the CRA Defendants' investigation would have required assessing complex legal and factual issues, which go beyond the duties imposed by the FCRA.

Seeking to avoid this conclusion, Plaintiff relies on *Chambers v. United States ex rel. U.S. Dep't of Educ.*, No. 4:24 CV 1516 CDP, 2025 WL 1642418 (E.D. Mo. June 10, 2025). There, an unknown third party used the plaintiff's information to obtain a Pell Grant from the defendant (the United States Department of Education) to fund their education at a community college in California. *Id*. at *1. When the third party withdrew from school, the defendant sought to collect the grant money. *Id*. The defendant then reported the plaintiff to CRAs, claiming that she owed approximately $4,000 in student loan debt. *Id*. The plaintiff disputed the debt with the CRAs and reported the identity theft to the defendant. *Id*. at *2. The CRAs then informed the defendant that the plaintiff's dispute involved fraud and provided information showing that the plaintiff was not associated with an address in California. *Id*. at *1-2. The defendant, however, continued to assert that the debt belonged to the plaintiff and thus it was not removed from her credit report. *Id*. at *2.

Accordingly, the plaintiff sued the defendant, alleging that it failed to conduct a reasonable investigation once notified by the CRAs that she disputed the debt as fraudulent, in violation of § 1681s-2(b) of the FCRA. *Id*. at *1. The defendant moved to dismiss for failure to state a claim, relying on *Roberts* to argue that the alleged inaccuracy in her credit report was not objectively and readily verifiable. *Id*. at *3. Initially noting that *Roberts* was not binding, the court stated that even if it were, "plaintiff's case would still not be subject to dismissal because her amended complaint alleges an 'objectively and readily verifiable inaccuracy in her credit report' – namely, that she was the victim of identity theft and was not the debtor." *Id*.

Here, notwithstanding that *Chambers* is not binding on this Court, its facts are distinguishable. There, the dispute presented a narrow, binary question: whether the debt belonged to the plaintiff at all. *See id*. In this case, by contrast, Plaintiff admits involvement in the transaction and instead challenges the validity of his signature. As a result, resolving that issue would involve far more than confirming identity; as noted above, it would require precisely the sort of fact-intensive, credibility-dependent inquiry that *Roberts* places beyond the scope of a CRA's obligations. *See Roberts*, 131 F.4th at 251 n.6 ("[C]onsumer reporting agencies . . . are not expected to function like full tribunals . . . ."). Therefore, *Chambers* does not change the Court's finding that the Complaint fails to plausibly allege an inaccuracy that is objectively and readily verifiable.

## IV.     Conclusion

For the foregoing reasons, the CRA Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) is **GRANTED**. Plaintiff's claims against the CRA Defendants are **DISMISSED WITH PREJUDICE**.

**AND IT IS SO ORDERED.**

s/Richard M. Gergel
Richard Mark Gergel
United States District Judge

April 16, 2026
Charleston, South Carolina